UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN ALTERNATIVE INSURANCE CORPORATION and COMMUNITY HOSPICE, INC.,<br><br>            Defendants. | No.  1:14-cv-00856-KJM-GSA<br><br><br>ORDER |

Angie Chavez faces civil liability for her role in an accident that killed a motorcyclist in Stanislaus County.  As many as four insurance policies may apply to the accident: two issued by Hartford Casualty Insurance Company and two issued by American Alternative Insurance Corporation (AAIC).  Hartford, the plaintiff here, seeks declaratory judgment of the priority of these four policies.  Hartford and AAIC filed cross motions for summary judgment. After considering the parties' briefs, the court determined a hearing was not necessary, and now GRANTS Hartford's motion and DENIES AAIC's motion for the reasons described below.

I.     BACKGROUND

Hartford and AAIC have stipulated to the facts underlying Hartford's complaint. *See* Joint Stip. Facts, ECF No. 26.  On February 24, 2012, while she was working for Community

1  Hospice, Chavez made a U-turn in her 2007 Toyota Camry and struck John Thatcher, who was
2  riding a motorcycle. *Id.* nos. 1, 2, 4, 5. Thatcher died of his injuries. *Id.* no. 3. Hartford had
3  issued Chavez the following insurance: a "Personal Auto Insurance Policy" with a $250,000
4  liability limit (the Hartford auto policy) and a "Personal Umbrella Liability Policy" with a $1
5  million liability limit (the Hartford umbrella policy). *Id.* nos. 6–8; *id.* Ex. A, ECF No. 27. AAIC
6  had issued Community Hospice the following insurance: a "Commercial Auto Policy" with a
7  $1 million liability limit (the AAIC auto policy) and a "Commercial Umbrella Policy" with a
8  $5 million liability limit (the AAIC umbrella policy). *Id.* nos. 9–11; *id.* Ex. B, ECF No. 28.

9        Hartford and AAIC received a demand letter from counsel for Thatcher's
10  surviving spouse and children in November 2012. The demand letter asserted more than
11  $11 million in damages but included a "policy limits demand" for the combined value of the
12  Hartford and Community Hospice policies, $7.25 million. *Id.* no. 14; *id.* Ex. C, at 7, ECF No. 29.
13  Hartford and AAIC value the Thatchers' claim at a lower amount and ostensibly did not accede to
14  this demand. *Id.* no. 15. The Thatchers filed a suit in Stanislaus County Superior Court in July
15  2013. *Id.* no. 16; *id.* Ex. D, ECF No. 30. Hartford is providing a defense to Chavez and
16  Community Hospice in that action. *Id.* no. 17.

17        Hartford and AAIC dispute the payout priority of their insurance policies.
18  Hartford seeks a declaration of the following priority: (1) Hartford's auto policy up to $250,000;
19  (2) AAIC's auto policy up to $1 million; and (3) Hartford's umbrella policy and AAIC's umbrella
20  policy up to their combined limit of $6 million proportional to their liability limits; that is, for
21  every dollar paid by Hartford's umbrella policy, AAIC's policy would pay five. Hartford Mem.
22  P.&A. Mot. Summ. J. 13 (Hartford Mem.), ECF No. 31-1. AAIC takes a different approach. It
23  believes the correct order is (1) Hartford's auto policy up to $250,000; (2) Hartford's umbrella
24  policy up to $1 million; (3) AAIC's auto policy up to $1 million; and (4) AAIC's umbrella policy
25  up to $5 million. AAIC Mem. P.&A. Mot. Summ. J. 13–14 (AAIC Mem.), ECF No. 32. AAIC's
26  proposed ordering depends on its contention that Hartford's auto and umbrella policies are in
27  reality only one policy, as evidenced by their common policy number. *Id.* at 4–7. As an
28  independent basis for its ordering, AAIC points to *GuideOne Mutual Insurance Company v. Utica*

*National Insurance Group*, 213 Cal. App. 4th 1494 (2013), as analogous. In *GuideOne*, the California Court of Appeal applied vicarious liability rules to determine the priority of liability. Applying vicarious liability here would exhaust Hartford's policy limits entirely before AAIC's, and the same priority would result. AAIC Mem. 7–9. In the alternative, AAIC proposes a priority based on traditional California common law: (1) Hartford's auto policy up to $250,000; (2) Hartford's umbrella policy and AAIC's auto policy prorated equally to their combined $2 million liability limits; and (3) AAIC's umbrella policy up to $5 million. *Id.* at 9-14.

II.   APPLICABLE LAW

Both parties have moved for summary judgment under Federal Rule of Civil Procedure 56. If "no genuine dispute as to any material fact" requires a trial, the court must enter judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1] Hartford and AAIC have stipulated that the facts underlying their motions are undisputed. Stip. Facts, ECF No. 26. In federal court, it has long been recognized that "[l]itigants . . . '[a]re entitled to have [their] case tried upon the assumption that . . . facts, stipulated into the record, were established.'" *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 676 (2010) (quoting *H. Hackfeld & Co. v. United States*, 197 U.S. 442, 447 (1905)) (brackets in *Christian Legal Soc.*). "[F]actual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Id.* (citation, internal quotation marks, and alterations omitted). Here, because the parties' stipulation reaches all facts material to the resolution of their dispute, the case may be resolved as a matter of law on summary judgment.[2]

/////

---

[1] Rule 56 was amended, effective December 1, 2010; however, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, advisory comm. notes on 2010 amendments.

[2] Hartford and AAIC dispute only whether Hartford's auto and umbrella policies are one or two policies. *See* AAIC Opp'n 2, ECF No. 33. Because this dispute is resolved by interpretation of the contracts stipulated to apply here, this dispute does not mean the case must go to trial.

This is a diversity action, so the court applies California law to interpret the parties' policies. *See Bell Lavalin, Inc. v. Simcoe & Erie Gen. Ins. Co.*, 61 F.3d 742, 745 (9th Cir. 1995). Interpretation of contracts, including insurance policies, is a question of law unless resolution of an ambiguity "turns on the credibility of extrinsic evidence." *Legacy Vulcan Corp. v. Superior Court*, 185 Cal. App. 4th 677, 689 (2010). The fundamental rules of contract interpretation apply equally to insurance policies, and require the court give effect to the parties' mutual intent at the time the contract was made. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citing Cal. Civ. Code § 1636). Each policy must be read as a whole. *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.* (*Sequoia*), 211 Cal. App. 3d 1285, 1298 (1989). Unless the parties intended to use words in a technical or special sense, a court reads a policy's language to understand its plain meaning as a layperson ordinarily would. *Waller*, 11 Cal. 4th at 18 (citing Cal Civ. Code § 1638).

California Insurance Code section 11580.9 was enacted to resolve conflicts about the order in which two or more applicable auto liability insurance policies must pay out. *Sequoia*, 211 Cal. App. 3d at 1296. Here, because subparts 11580.9(a), (b), and (c) are not implicated, subpart (d) applies:

> [W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

Cal. Ins. Code § 11580.9(d). A "primary" insurance policy "provides coverage immediately upon the occurrence of a loss or an event giving rise to liability." *Legacy Vulcan*, 185 Cal. App. 4th at 689. An "excess" insurance policy provides coverage "only upon the exhaustion of specified primary insurance."[3] *Id.* In *Sequoia*, the state court of appeal also defined two types of excess

---

[3] California courts use the words "excess," "secondary," and "umbrella" insurance somewhat interchangeably. *Compare, e.g.*, *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 598 (1981) ("Secondary insurance is sometimes referred to as 'umbrella' insurance."), *with, e.g.*, *Legacy Vulcan*, 185 Cal. App. 4th at 689 ("Insurance policies sometimes include both excess and umbrella insurance. Umbrella insurance provides coverage for claims

4

insurance: "specific excess" is insurance "written to be excess to identified policies," 211 Cal. App. 3d at 1295 (quoting *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 598 (1981)); an "incidental excess" policy is one "designed to be primary but is only incidentally excess by reason of the existence of other coverage," *id.* at 1296.

Section 11580.9(d) governs only the priority of liability between primary and excess insurance, not the priority of liability for the remaining excess policies. *GuideOne*, 213 Cal. App. 4th at 1502–03; *Sequoia*, 211 Cal. App. 3d at 1302. Priority of liability for excess policies is subject to judicial interpretation of those policies' "other insurance" clauses. *Sequoia*, 211 Cal. App. 3d at 1302–03. If literal application of "other insurance" terms would make each policy excess of the other, California courts normally disregard the conflicting terms. *Olympic*, 126 Cal. App. 3d at 599. Policies ranked equally in priority of liability this way pay out proportionally to their liability limits.[4] *Id.* Because the priority of liability for excess insurance policies depends on contextual interpretation of their "other insurance" clauses, and because "other insurance" clauses differ from one policy to the next, analogies between cases are often muddled. Nevertheless, two categories of cases are notable here.

First, more than one primary-type policy may apply to an accident even though only one describes the car in question. In this circumstance, each primary policy—whether made excess by section 11580.9(d) or its other insurance provisions—precedes any non-primary excess policies in priority of liability. In *Continental Insurance Company v. Lexington Insurance Company*, the court ranked first a policy whose "general object and purpose . . . was to provide primary insurance" and second a policy whose "general object and purpose . . . was to provide excess coverage over and above all other underlying insurance." 55 Cal. App. 4th 637, 646–47 (1997) (citing Ostrager and Newman, *Handbook on Insurance Coverage Disputes* § 11.03[e], at 516–17 (8th ed. 1995)). In *Sequoia,* the court applied its definition of "incidental excess"

---

that are not covered by the underlying primary insurance. . . . Thus, a policy that provides both excess and umbrella insurance provides both excess and primary coverage.").

[4] In other words, given policy $A$ with liability limit $x$ and policy $B$ with liability limit $y$, policy $A$ pays out $x / (x + y)$ percent of each dollar of liability and policy $B$ pays out $y / (x + y)$ percent of each dollar of liability.

5

insurance to this situation and ranked "incidental excess" policies before "specific excess" policies. 211 Cal. App. 3d at 1303 ("[T]he Sequoia policy herein is a 'primary' type automobile policy with standard 'excess as to nonowned automobiles' language and is therefore excess to the Hartford 'primary' policy but primary with respect to both the Hartford Umbrella policy and the Transamerica Umbrella policy."). In *Lovy v. State Farm Insurance Company*, the court prioritized as first three primary policies without excess provisions, second a policy that provided for excess coverage on non-owned autos, and third a policy that provided it was excess over all other insurance. 117 Cal. App. 3d 834, 865 (1981). This approach implements "settled . . . California law that an excess or secondary policy does not cover a loss . . . until *all* of the primary insurance has been exhausted." *Cmty. Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 339 (1996) (emphasis in original), *as modified* (Nov. 13, 1996); *see also id.* (citing *Olympic*, 126 Cal. App. 3d at 600, for the proposition that "[i]t [does] not matter that the primary policy to which the secondary policy had been specifically excess had itself been exhausted.").

Second, the court in *GuideOne* recently held that the default priority rules must give way to the specific structure of *respondeat superior* liability. *See GuideOne*, 213 Cal. App. 4th at 1504. When allocating coverage among policies deemed excess by section 11580.9(d), "all of the insurance policies covering the tortfeasor employee, primary and excess, must be exhausted before the umbrella policy of an insurer that covered only the employer must make a contribution." *Id.* at 1496. The tortfeasor employee is primarily liable and the employer only secondarily liable; therefore, a policy which applies only to the employer (and not the employee) can contribute only after the employee's insurance is exhausted. *Id.* at 1504; s*ee also United States Fire Ins. Co v. National Union Fire Ins. Co.*, 107 Cal. App. 3d 456 (1980) ("The nonowned aircraft coverage . . . was expressly limited to the vicarious liability of the named insured . . . . As such, it was secondary to any coverage [of the pilot] individually as negligent operator of the aircraft.").

With these rules in mind, the court turns to Hartford and AAIC's dispute.

/////

III.     DISCUSSION

Section 11580.9(d) makes Hartford's auto policy the primary policy and ranks it first. It is the only policy "in which the motor vehicle," Chavez's Toyota Camry, "is described or rated as an owned automobile." Cal. Ins. Code § 11580.9(d); *see* Stip. Facts, no. 13, Ex. A, pt. 1, at 2, 8.[5] Despite their common policy number, the Hartford auto policy and Hartford umbrella policy are not the same policy for purposes of section 11580.9(d). Their language and format foreclose any other conclusion. The policies are titled separately "The Hartford Auto Insurance Policy" and "Personal Umbrella Liability Policy." Stip. Facts Ex. A, pt. 1, at 5; *id.* Ex. A, pt. 2, at 14, 15. The umbrella policy reads, on its first page, "All the provisions, stipulations and other terms of this policy shall apply only as specified herein and none of the provisions, stipulations, and other terms of the policy to which this Personal Umbrella Liability Policy is attached shall apply to insurance hereunder." *Id.* Ex. A, pt. 2, at 14. The two agreements have separate pagination schemes. *See generally id.* Ex. A ("Page [#] of 18" and "PULP-[#]"). The auto policy table of contents does not refer to the umbrella policy. *Id.* Ex. A, pt. 1, at 6. The umbrella policy lists the auto policy as an underlying policy. *Id.* Ex. A, pt. 2, at 14. Each has a different and separately listed premium. *Id.* Ex. A, pt. 1, at 2; *id.* Ex. A, pt. 2, at 14. The auto policy refers to the umbrella policy as a separate enclosure. *Id.* Ex. A, pt. 1, at 4. The umbrella policy does not list the auto policy forms among those "forming part of policy on effective date hereof." *Id.* Ex. A, pt. 2, at 14. Because the Hartford auto policy is primary, the remaining three are excess.

As a threshold matter, the vicarious liability rules of *GuideOne* do not apply here. Chavez and Community Hospice both qualify as "insureds" under all four policies at issue. AAIC's Resp. Stmt. Undisp. Mat. Facts, nos. 11, 15, 20, 26, ECF No. 33-1. Because Chavez is an "insured" under all four policies, the rules of vicarious liability do not alter the priority or liability for excess insurance. *See GuideOne*, 213 Cal. App. 4th at 1496 ("[A]ll of the insurance policies covering the tortfeasor employee, primary and excess, must be exhausted before the umbrella policy of an insurer that covered *only* the employer must make a contribution."

---

[5] Page numbers refer to those applied at the top of each page by the CM/ECF system.

(emphasis added)). California's common-law rules of priority of liability must therefore rank the three excess policies.

Priority of liability for excess insurance depends on interpretation of each policy's "other insurance" clauses. The Hartford umbrella policy and the AAIC umbrella policy both contain "excess over other insurance" clauses. *See* Stip. Facts Ex. A, pt. 2, at 22 ("The coverage afforded by this policy is excess over any other insurance available to an insured, except insurance written specifically to be excess over this policy."); *id.* Ex. B, pt. 3, at 5 ("If other insurance applies to a claim covered by this policy, the insurance under this policy is excess of such other insurance and we will NOT make any payments until the other insurance has been used up." (emphasis in original)). Both are true excess insurance policies. *Olympic*, 126 Cal. App. 3d at 598. The AAIC auto policy, however, is not a specific excess policy, but made excess by the Hartford auto policy's primary liability under section 11580.9(d). The AAIC auto policy provides, "For any covered 'auto' you own, this Coverage Form provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this Coverage form is excess over any other collectible insurance." *Id.* Ex. B, pt. 1, at 30. *Cf. Sequoia*, 211 Cal. App. 3d at 1293 (finding the following language described "incidental excess" insurance: "The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance"). Only by ignoring the clear language of the Hartford and AAIC umbrella policies could the court place those policies on the same plane as the AAIC auto policy.

IV.     CONCLUSION

In conclusion, the court GRANTS Hartford's motion and DENIES AAIC's motion. The priority of coverage is as follows:

(1) The Hartford auto policy up to its $250,000 limit of liability;

(2) The AAIC auto policy up to its $1 million limit of liability; and

/////

/////

/////

8

(3) The Hartford umbrella policy and AAIC umbrella policy up to their combined liability limit of $6 million, each providing coverage proportional to their separate liability limits, Hartford at one-sixth and AAIC at five-sixths.

IT IS SO ORDERED.

DATED: April 21, 2015.

_____
UNITED STATES DISTRICT JUDGE